Opinion issued February 24, 2005






     





In The
Court of Appeals
For The
First District of Texas




NOS. 01-04-00074-CR
          01-04-00075-CR




BERNAVE SOSA, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause Nos. 934032 & 934033




O P I N I O N
          In cause number 934032, appellant, Bernave Sosa, pleaded not guilty to the
aggravated robbery of Darlene Galvan. The trial court found him guilty and
sentenced him to 40 years’ confinement. In cause number 934033, Sosa pleaded not
guilty to the aggravated assault of Adriana Galvan. The trial court found him guilty
and sentenced him to 20 years’ confinement. We hold that the evidence is legally and
factually sufficient to support the convictions. We therefore affirm. 
Facts
          Darlene Galvan lived at 1002 Avenue B with her boyfriend, Glen Ellis, and her
daughters, Janelle (age 14), Vanessa (age 12), and Adriana (age 8). One afternoon
in December 2002, two men broke into Darlene’s home. Both suspects wore black
ski masks and carried guns. One intruder was heavyset and wore a blue sweat shirt
and jeans. The other intruder, later identified as Sosa, was smaller and wore a white
T-shirt and jeans. 
          Darlene, her three daughters, and her daughter’s friend were home during the
break-in. Ellis was not home. From her bedroom, Darlene heard Adriana run down
the hallway, screaming, “Mommy, mommy, help me.” Janelle testified that she saw
one of the intruders chase Adriana with a gun. Janelle was not certain, but she
thought the man in the dark sweat shirt was the one who chased Adriana. 
          When Darlene opened her bedroom door, Sosa pointed a gun to her head. Sosa
then grabbed Darlene and threw her onto the floor in Janelle’s bedroom, where
Adriana, Janelle, and her friend lay on the floor screaming. The two gunmen
demanded money, and Darlene replied, “Please don’t kill my kids.” Both gunmen
walked in and out of Janelle’s room; however, the man in the blue shirt remained in
the bedroom for most of the time. Darlene testified that the man who remained in the
bedroom pointed the gun at Darlene and the girls, demanding them to sit still. One
of the men grabbed Darlene’s small safe from her bedroom and threw it on top of
Darlene.



          From a different area of the house, Vanessa saw the man in the white T-shirt
holding a gun at her mother’s head. Vanessa was afraid and ran out of the house. 
She saw a Suburban parked in the driveway. When the driver noticed Vanessa, he
honked his horn and drove away. Vanessa ran to the neighbor’s house, and the
neighbor called the police. 
          Officers Michael Amador and Mark Mills responded to the call. Officer
Amador entered the home and pursued the two masked men, who ran into Darlene’s
bedroom, shut the door, and broke a window in an attempt to escape. Officer Amador
saw Sosa climbing out through the window. Officer Amador stayed inside to protect
the victims. Officer Mills ran outside and followed Sosa as he ran through the
adjacent back yard, into a nearby alleyway, and into a breezeway between two
businesses. Remaining in constant radio communication with the other officers,
Officer Mills chased Sosa. Officer Mills lost sight of Sosa for “a matter of seconds”
as he rounded the corners; however, no other people were outside during the chase. 
Detective Chance, who had been monitoring the chase via his car radio, drove to the
scene and apprehended Sosa. 
          The officers arrested Sosa and drove him back to Darlene’s house. Darlene and
Officer Amador identified Sosa based on his clothing, height, and build. Janelle
identified Sosa based on his clothing. The intruders had ransacked Darlene’s
bedroom and had taken Ellis’s gun. The officers recovered the ski masks, weapons,
and bullets, none of which contained evidence as to the identity of the intruders. 
Standards of Review
          In a legal sufficiency review, we view all of the evidence in the light most
favorable to the verdict and then determine whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). In a factual sufficiency review,
we view all of the evidence in a neutral light, and we will set the verdict aside only
if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or
the contrary evidence is so strong that the standard of proof beyond a reasonable
doubt could not have been met. Id. (citing Zuniga v. State, 144 S.W.3d 477, 483
(Tex. Crim. App. 2004)). Although our analysis considers all the evidence presented
at trial, the trier of fact is the exclusive judge of the facts, the credibility of the
witnesses, and the weight to be given to their testimony. Sharp v. State, 707 S.W.2d
611, 614 (Tex. Crim. App. 1986). We may not substitute our own judgment for that
of the fact finder. Johnson v. State, 23 S.W.3d 1, 12 (Tex. 2000). 
 
Sufficiency of the Evidence
          A person commits aggravated robbery if he intentionally or knowingly
threatens or places another in fear of imminent bodily injury or death, in the course
of committing theft, with intent to obtain or to maintain control of the property, and
uses or exhibits a deadly weapon (here, a firearm). See Tex. Pen. Code Ann. §§
29.02(a)(2), 29.03(a)(2) (Vernon 2003). A person commits aggravated assault if he
intentionally or knowingly threatens another with imminent bodily injury, and uses
or exhibits a deadly weapon during the commission of the assault. Tex. Pen. Code
Ann. §§ 22.01(a)(2), 22.02(a)(2) (Vernon Supp. 2004-2005). 
          Identity
          With regard to the aggravated robbery and aggravated assault convictions, Sosa
contends that the evidence is legally and factually insufficient to establish his identity
because the witnesses did not describe his facial appearance. Rather, the witnesses
identified him based upon his clothing, height, and build. Identification based upon
an individual’s build, when corroborated with additional evidence, can be legally
sufficient. See Hutchinson v. State, 42 S.W.3d 336, 342-43 (Tex. App.—Texarkana
2001), aff’d 86 S.W.3d 636 (Tex. Crim. App. 2002) (holding that evidence sufficient
based upon testimony of defendant’s build, gait, and hat); Lunn v. State, 753 S.W.2d
492, 495-96 (Tex. App.—Beaumont 1988, no pet.) (holding that evidence sufficient
based upon victim’s recognition of defendant’s eyes, voice, and words used during
assault).
          Darlene described Sosa as a smaller man, wearing a white T-shirt and jeans. 
When the police arrived at Darlene’s house after arresting Sosa, Darlene identified
Sosa as the same man who had pointed a gun at her in her hallway. She recognized
Sosa based upon his clothing, the way his clothing fit, his height, build, and the “way
he looked.” Janelle identified Sosa based on his clothing. She testified that Sosa’s
white T-shirt was torn “like somebody was pulling him,” and he had facial cuts from
the broken glass. Officer Amador identified Sosa as the intruder he had seen inside
Darlene’s home based upon his clothing, height, and build. 
          Moreover, Sosa fled from the scene of a home invasion. The mere presence of
an accused at the scene of an offense is not alone sufficient to support a conviction;
however, it is a circumstance tending to prove guilt which, combined with other facts,
may suffice to show that the accused was a participant. Valdez v. State, 623 S.W.2d
317, 321 (Tex. Crim. App. 1979). While flight alone will not support a guilty verdict,
evidence of flight from a crime scene is a circumstance from which an inference of
guilt may be drawn. Id. Officer Mills chased Sosa from the adjacent backyard to the
point of arrest. Officer Mills lost sight of Sosa for mere seconds as he rounded the
corners; however, no other people were outside during the chase. Officer Mills
identified Sosa based on his clothing and build. 
          Thus, the witnesses identified Sosa based upon more than his build. They also
identified his clothing and height. See Hutchinson, 42 S.W.3d at 342, aff’d 86
S.W.3d 636. Additionally, Sosa’s presence at the scene and flight therefrom are
circumstances tending to prove guilt. See Valdez, 623 S.W.2d at 321. Sosa’s
contention that the identification is unreliable because the intruder wore a mask goes
to the witnessess’ credibility. See Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim.
App. 1999) (stating that trier of fact is sole judge of credibility of eyewitnesses and
strength of evidence). 
          Viewing all of the evidence in the light most favorable to the verdict, a rational
trier of fact could have established Sosa’s identity beyond a reasonable doubt with
regard to the aggravated robbery and aggravated assault convictions. See Escamilla,
143 S.W.3d at 817. We thus hold that the evidence is legally sufficient. Sosa’s
factual sufficiency complaint reasserts the same claims as those in his legal
sufficiency complaint. Sosa did not testify at trial and the State’s evidence is not
inherently weak. Viewing all of the evidence in a neutral light, the evidence is not
so weak that the verdict is clearly wrong and manifestly unjust; therefore, we hold
that the evidence is factually sufficient. See id.
          Imminent Bodily Injury
          With regard to the aggravated assault conviction, Sosa contends that the
evidence is legally and factually insufficient to establish that he threatened Adriana
with imminent bodily injury because Adriana did not testify. Janelle testified that,
although she was not certain, she thought the other intruder—the man in the dark
sweat shirt—chased Adriana while pointing his gun at her. Darlene testified that the
other intruder pointed a gun at Darlene, Adriana, and the other girls, demanding them
to sit still.


 Darlene and Janelle testified that Sosa demanded money while he walked
in and out of the bedroom, where Darlene, Adriana, and the other girls remained on
the floor. 
          “The display of a deadly weapon of and within itself constitutes a threat of the
required imminent harm.” Robinson v. State, 596 S.W.2d 130, 133 n.7 (Tex. Crim.
App. 1980) (holding that omission of “imminent” from jury instruction on element
of placing another in fear of imminent bodily injury or death was not error); cf.
Peterson v. State, 574 S.W.2d 90, 92 (Tex. Crim. App. 1978) (holding that, “implicit
in the allegation that a ‘Deadly Weapon’ was used to threaten the complainant is the
possibility that the complainant was threatened with death as well as bodily injury”). 
The evidence in this case establishes that the other intruder, not Sosa, “pointed” a gun
at Adriana. Darlene and Janelle testified, however, that Sosa held a gun in his hands,
demanded money, and walked in and out of the bedroom where Adriana remained on
the floor. Sosa’s display of a deadly weapon while demanding money constitutes a
threat of the required imminent harm. See Robinson, 596 S.W.2d at 133 n.7. 
          Moreover, under the law of parties—which the trial court, as fact-finder, could
consider—a person is criminally responsible for an offense committed by the conduct
of another if, acting with intent to promote or assist the commission of the offense,
he solicits, encourages, directs, aids, or attempts to aid the other person to commit the
offense. Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 2003). The evidence establishes
that the other intruder pointed his gun and chased Adriana. Under the law of parties,
Sosa is criminally responsible for the aggravated assault because Sosa, acting with
intent to promote or assist the commission of the offense, solicited, encouraged,
directed, aided, or attempted to aid the other person to commit the offense. See
Johnson v. State, 6 S.W.3d 709, 711 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d)
(holding sufficient evidence of aggravated robbery under law of parties because
defendant performed reconnaissance of robbery location and drove getaway car, but
was not present at robbery when gun was displayed); see also Escobar v. State, 28
S.W.3d 767, 774 (Tex. App.—Corpus Christi 2000, pet. ref’d) (holding sufficient
evidence of aggravated robbery under law of parties because defendant entered
getaway vehicle with stolen merchandise while third party pointed gun at victim);
Brewer v. State, 852 S.W.2d 643, 647 (Tex. App.—Dallas 1993, pet. ref’d) (holding
sufficient evidence of aggravated robbery under law of parties because defendant
dropped off and picked up accomplice who committed armed robbery). 
          Viewing all of the evidence in the light most favorable to the verdict, a rational
trier of fact could have established beyond a reasonable doubt that Sosa threatened
Adriana with imminent bodily injury. See Escamilla, 143 S.W.3d at 817. We thus
hold that the evidence is legally sufficient. Here, Sosa’s factual sufficiency complaint
reasserts the same claims as those in his legal sufficiency complaint. Sosa did not
testify at trial and the State’s evidence is not inherently weak. Viewing all of the
evidence in a neutral light, the evidence is not so weak that the verdict is clearly
wrong and manifestly unjust; therefore, we hold that the evidence is factually
sufficient. See id.
Conclusion
          We hold that the evidence is legally and factually sufficient to support the
convictions. We therefore affirm the judgments of the trial court. 
 


                                                             Jane Bland
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Higley and Bland.
Publish. Tex. R. App. P. 47.2(b).